UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERROL LOVELL UNDERWOOD,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT MAYES,<br><br>Defendant. | No. 2:22-cv-0694 DAD DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant injected him with the COVID-19 vaccine without his consent. Before the court is defendant's motion for summary judgment. For the reasons set forth below, this court will recommend defendant's motion be granted.

## BACKGROUND

This case is proceeding on plaintiff's claim in his complaint filed here on April 20, 2022 against defendant Robert Mayes. Plaintiff alleges that in August 2021, defendant, a physician at California State Prison-Solano, gave him an injection of the COVID-19 vaccine without plaintiff's consent or knowledge.

On January 29, 2024, defendant moved for summary judgment. (ECF No. 44.) Defendant argues that the undisputed facts show that plaintiff was not given the COVID-19 vaccine at that time. Plaintiff filed an opposition (ECF No. 50) and defendant filed a reply (ECF No. 51).

1

**MOTION FOR SUMMARY JUDGMENT**

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of

2

affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the

opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

## II.     Legal Standards

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."  Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261, 277-78 (1990).  "Furthermore, and specific to the prison context, a Fourteenth Amendment violation arises where 'prison medical personnel perform[ ] major medical procedures upon the body of any inmate, without his consent and over his known objections, that were not required to preserve his life or further a compelling interest of imprisonment or prison security.'"  Galvan v. Duffie, 807 F. App'x 696, 697 (9th Cir. 2020) (quoting Runnels v. Rosendale, 499 F.2d 733, 735 (9th Cir. 1974)).  In Galvan, the Ninth Circuit held that the defendant was not entitled to qualified immunity for removing the plaintiff's teeth without his consent because "[e]xisting precedent at the time of the procedure placed the constitutional question beyond debate."  Id. (citing White v. Pauly, 580 U.S. 73, 77-78 (2017)).[1]

## III.    Undisputed Material Facts[2]

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a).  (ECF No. 44-2.)  Plaintiff's filing in opposition to defendant's motion for summary judgment includes a "Statement of Disputed Facts" in which plaintiff addresses each of defendant's facts in the DSUF.  (See ECF No. 50 at 4-15.)  The following facts are not disputed:

---

[1] The parties do not dispute the applicability of these standards to plaintiff's claim.  However, the court notes that it has not found a case applying the Fourteenth Amendment analysis to a claim by a prisoner that they were given a vaccine without their consent.  In any event, defendant's motion is based on the absence of a fact essential to plaintiff's claim, not on an interpretation of the law.

[2] Disputed facts are considered in the "Discussion" section that follows.

- Plaintiff Errol Lovell Underwood is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was incarcerated at California State Prison, Solano ("CSP-SOL") in 2021. (DSUF #1.)
- At all relevant times, defendant Mayes was a doctor at CSP-SOL. In August 2021, Mayes was not yet plaintiff's doctor. Plaintiff was formally assigned to defendant's caseload as a full-time patient on October 23, 2021. (DSUF #2.)
- In an effort to combat the COVID-19 pandemic, California Correctional Health Care Services ("CCHCS") began to offer COVID-19 vaccines to inmates and staff in December 2020. (DSUF #3.)
- As part of these efforts, prison doctors would order each patient in their care a COVID-19 vaccine to ensure that every inmate who wanted one received one. (DSUF #4.)
- It was CCHCS policy for an inmate's doctor to continue ordering the vaccine for the unvaccinated inmate to ensure the COVID-19 vaccine would remain available for them should that inmate change their mind about receiving the vaccine in the future. Therefore, CSP-SOL doctors would continue to offer the vaccine to the unvaccinated inmate, who maintained the option to consent or decline the COVID-19 vaccine. Staff would order the vaccine in increments consistent with the timing that doses and subsequent boosters would be offered in the prison community (two doses and subsequent booster shots). (DSUF #13.)
- Plaintiff suffers from sciatica and back pain. (DSUF #14.)
- On August 13, 2021, CSP-SOL's Triage and Treatment Area ("TTA") administered a nonsteroidal anti-inflammatory drug ("NSAID") called "Ketorolac" (brand name "Toradol") to alleviate the pain in plaintiff's right leg and back. Plaintiff's medical records show that the TTA doctor administered Ketorolac via intramuscular injection (noted as "IM") to plaintiff's arm, and recommended that plaintiff follow up with a doctor within two weeks. (DSUF #15.)

////

- Pursuant to CCHCS policy, and because plaintiff was transitioning to defendant's caseload, on August 5, 2021, defendant ordered a Moderna COVID-19 to be available for the month of August for plaintiff.  (DSUF #18.)
- On August 22, 2021, plaintiff was asked about the COVID-19 vaccine and stated that he was refusing it.  (Ex. A to Plt.'s Oppo. (ECF No. 50 at 37); Ex. C to Mayes' Decl. (ECF No. 44-5 at 17).)
- On August 23, 2021, plaintiff met with defendant in person for a follow-up appointment about plaintiff's sciatica pain.  This was their first time meeting and plaintiff reported having trouble walking because of his sciatica pain.  (DSUF #19.)
- In addition to giving plaintiff a physical examination and discussing his sciatica and lower-back pain, defendant told plaintiff that his underlying conditions, coronary artery disease and hypertension, could interact with the COVID-19 virus as comorbidities.  (DSUF #21.)
- Defendant asked plaintiff if he had been vaccinated for COVID-19 and plaintiff said he had not.  Plaintiff's medical records confirmed that he was unvaccinated.  (DSUF #22.)
- Defendant told plaintiff he would give plaintiff a shot for his sciatica pain.  (DSUF ##27, 28; Compl. (ECF No. 1 at 3); Plt.'s Depo. at 26.)
- At some point, Dr. Largoza came into the examining room and spoke with defendant.  (Plt.'s Oppo. (ECF No. 50 at 12); Mayes' Decl. (ECF No. 44-5 at 5).)
- The discharge instructions plaintiff was given when he left the August 23 appointment list, as item number 4 under the heading "Reason for Visit," "High Priority for COVID-19 Virus Vaccination."  (Ex. B to Plt.'s Oppo. (ECF No. 50 at 39-45); Ex. E to Mayes' Decl. (ECF No. 44-5 at 23-28).)
- The discharge instructions for the August 23 appointment have a page entitled "Assessment Forms."  One of the entries under the heading "Medication List (As

////

1  Of: 8/13/2021  12:41:00 PDT)" is entitled "COVID-19 Vaccine (Moderna) [¶]

2  (0273-99)." The description states:

> COVID-19 Vaccine (Moderna) (0273-99); Status: Ordered; Ordered as Mnemonic: Moderna COVID-19 Vaccine; Simple Display Line: 100 mcg, IM, As Indicated; Ordering Provider: Mayes, Robert P&S; Catalog Code: SARS-CoV-2 (COVID-19) mRNA-1273 vaccine; Order Dt/Tm: 8/5/2021  14:38:29 PDT; Comment: ***Moderna Covid-19 Vaccine is not interchangeable with other Covid-19 vaccines.***To be injected in the deltoid muscle.**Dose 1 of 2**

(Id.)

- The following page of the discharge instructions for the August 23 appointment is entitled "Discharge Documentation." Under the category "MEDICATIONS," there is a subheading entitled "Start Taking These Medications." The first entry under that subheading is:

> **COVID-19 Vaccine (Moderna) (02799) (Moderna COVID-19 Vaccine)**
>
> • For High priority for COVID-19 virus vaccination: Take 0.5 mL (Total Dose = 100 mcg), into the muscle as indicated from a nurse
>
> • Start Date:  August 05, 2021
>
> • Take for:  1 dose(s)
>
> Comments:  ***Moderna Covid-19 Vaccine is not interchangeable with other Covid-19 vaccines.***To be injected in the deltoid muscle.

(Id.)

- Under the category "MEDICATIONS," there is a subheading entitled "Continue Taking These Medications." None of the entries under this subheading mention the COVID-19 vaccine. (Id.)

- The last subheading under the category "MEDICATIONS" is "Completed Medications." The first item listed is:

////

////

>    **COVID-19 Vaccine (Moderna) (02799) (Moderna COVID-19 Vaccine)**
>
>    • For High priority for COVID-19 virus vaccination: Take 0.5 mL (Total Dose = 100 mcg), into the muscle as indicated from a nurse
>
>    • Start Date: August 05, 2021
>
>    • Take for: 1 dose(s)
>
>    Comments:     ***Moderna Covid-19 Vaccine is not interchangeable with other Covid-19 vaccines.***To be injected in the deltoid muscle.

(Id.)

- In a document entitled "Progress Notes," and reflecting an office visit by plaintiff to defendant on August 23, 2021, under the heading "Assessment/Plan," under the category "Back pain," it states "Acute lumbar spasm/pain. Case d/w Dr Lagoza. Steroid injection performed in Exam room to right buttocks. Patient tolerated well. He was stable to return to housing." The progress notes do not mention the COVID-19 vaccine. (ECF No. 44-5 at 20-21.)
- In the grievance plaintiff submitted to the prison regarding his August 23 visit with defendant, plaintiff stated that defendant had given him an injection in his "deltoid muscle. Any other time I got a shot for sciatica pain it was in my arm. I returned to the building in pain  The top of my butt was hurting for days. . . ." (ECF No. 44-4 at 9.)

**IV.   Discussion**

Defendant's motion for summary judgment raises one factual issue – whether defendant gave plaintiff the COVID-19 vaccine during the August 23, 2021 appointment. Defendant states that the records show plaintiff was given a steroid injection in his buttock for his sciatica pain and was not given a COVID-19 vaccination. As discussed below, this court finds plaintiff has not provided a factual basis for his claim that defendant injected him with the COVID-19 vaccine on August 23, 2021. Because plaintiff fails to demonstrate there is a plausible dispute of material fact, this court will recommend defendant's motion be granted.

### A. Defendant's Argument and Evidence

Defendant presents his declaration and the declaration of Dr. Largoza, who was also employed at CSP-SOL during the relevant time period. (ECF Nos. 44-5, 44-6.) Both declarants provide copies of records from plaintiff's medical file. Plaintiff does not dispute that these records are part of his medical file. Both declarants also describe the procedures used at CSP-SOL in August 2021 for prescribing, storing, and administering the COVID-19 vaccine to prisoners.

Defendant argues that he could not have given plaintiff the COVID-19 vaccine because he did not have access to the vaccine. He further argues that plaintiff's medical records show that the vaccine was ordered for plaintiff pursuant to prison policy but the records do not show plaintiff was given the vaccine.

#### 1. Procedures for Prescribing the Vaccine during the Summer of 2021

The practice at CSP-SOL was for primary care providers to order a COVID-19 vaccine for each patient in their care to ensure that every inmate who wanted one received one. Every vaccine order was active for thirty days so there was a thirty-day window for staff to offer the vaccine to an inmate. When the vaccine was offered, the inmate had the option of consenting or refusing it. Medical staff would then close out the order by indicating that the vaccine was "GIVEN" or "DECLINED" by the inmate.

If the inmate refused the vaccine in writing, it would not be administered to the inmate and that order would become inactive as "refused" or "declined." Once the order became inactive, that dose of the COVID-19 vaccine would never leave the pharmacy. Prison policy dictated that the refusing inmate's doctor would place a new order for the vaccine to ensure the vaccine would be available if the inmate changed their mind.

#### 2. Procedures for Storing the COVID-19 Vaccine

COVID-19 vaccines were stored in CSP-SOL's pharmacy. The pharmacy is located in a separate building from the medical clinics. Primary care providers did not have direct, physical access to the vaccines kept in the pharmacy.

////

### 3. Procedures for Administering the COVID-19 Vaccine

COVID-19 vaccines were only administered by specially trained "public health" nurses. The nurses administered the COVID-19 vaccines directly to inmates in their housing units. The nurses did not administer COVID-19 vaccines in the medical clinics.

### B. Plaintiff's Argument and Evidence

Plaintiff states that when he saw defendant on August 23, defendant injected him in his deltoid muscle with "the vaccine (Moderna) total dose 100 mcg's." (ECF No. 50 at 3.) Plaintiff indicates he did not know it was the COVID-19 vaccine until he looked at the patient discharge instructions. (Id.) Plaintiff further states that defendant would have known plaintiff had consistently refused to consent to the vaccine. (Id.) Plaintiff assumed the injection in his deltoid muscle was a pain reliever. (Id. at 7.) Plaintiff states that he was injected in his arm. (Id. at 11.)

Plaintiff contends the "pharmacy is in the medical clinic, where the plaintiff was injected." (ECF No. 50 at 4.) Plaintiff states that the prison policy creating a "30 day window" for the vaccine meant that doctors could access the vaccine during that time. (Id. at 6.) Because the vaccine was ordered on August 5 and 30 days had not elapsed, the 30-day window was still open and defendant could have had access to the vaccine. (Id. at 8-9.)

### C. Analysis

Plaintiff challenges a number of defendant's factual assertions. Plaintiff argues that doctors could easily access the vaccine because they just needed to ask a nurse or they could get it themselves. (ECF No. 50 at 5.) However, plaintiff does not show that he has personal knowledge of the procedures for obtaining the COVID-19 vaccine. Plaintiff presents no competent evidence to rebut the sworn statements of defendant and Dr. Largoza that the COVID-19 vaccine was kept in the pharmacy located in a separate building from the medical clinic and that doctors did not have access to it.

Plaintiff also notes that defendant's assertion that he was given an injection in his buttock is not supported by the discharge instructions. They do not state that plaintiff was given any sort of injection for pain relief. (ECF No. 50 at 10.) Plaintiff attempts to explain the statement made in his grievance that the top of his butt hurt after the visit. He says he made that comment

"because the nerve runs from your buttock to the bottom of your feet," an argument, it appears, to show that he was complaining about his sciatica pain in the grievance. (Id. at 18.) However, that interpretation of plaintiff's grievance is simply not credible. In his grievance, it is apparent plaintiff believed his "deltoid" muscle is not in his arm. Plaintiff stated that defendant injected him in his deltoid muscle but "[a]ny other time I got a shot for sciatica pain it was in my arm." Plaintiff then states that "[t]he top of my butt was hurting for days."

With respect to the absence of the steroid injection in the discharge instructions, plaintiff does not show that the discharge instructions would have necessarily reflected that he received the injection. The "Medication List" in the instructions shows the medications plaintiff had been ordered as of August 13, 2021. The following section instructs plaintiff to "Start Taking These Medications." The medications listed are two prescriptions for pain that plaintiff was prescribed on August 13, 2021 and the document provides instructions for taking them. The only other listed medication is the COVID-19 vaccine, which was ordered on August 5. Because plaintiff had already been given the Kenalog pain injection on August 23, and there was no indication it was something he would regularly take, it's absence from this list is not surprising. The same is true for the following list of medications that plaintiff should continue to take. The final category is "Completed Medications" and it lists only the COVID-19 vaccine. While this court certainly finds the inclusion of the COVID-19 vaccine in this list confusing, defendant has provided credible evidence that sufficiently explains its presence on this list. It's also worth noting that none of the pain injections plaintiff had received previously were included on the "Completed Medications" list. Plaintiff fails to show the Kenalog injection should have shown up in his discharge instructions.

To survive summary judgment, plaintiff must provide sufficient factual support for his claims. While this court must draw "all reasonable inferences" from the evidence in plaintiff's favor, it may only do so where plaintiff has provided a factual predicate upon which that inference may be based. See Richards, 602 F. Supp. at 1244-45. Plaintiff's filings, and his deposition testimony, show that plaintiff assumes he was given the COVID-19 vaccine based on the discharge forms he was provided after the August 23 visit. This court certainly understands

plaintiff's confusion about the forms. However, plaintiff has no basis for his interpretation. Defendant, on the other hand, provides sworn declarations from both himself and another CDCR doctor which explain the entries in plaintiff's records. They explain that once a vaccine was ordered for an inmate, there was a 30-day window during which it was available to be administered to the inmate. If the inmate was asked whether he wanted the vaccine during this time period, and if the inmate refused, then the order was closed and listed as "complete." That dose of the vaccine would not at that point leave the pharmacy. Plaintiff offers no competent evidence that those doctors' explanations are incorrect.

Plaintiff's only fact-based assertion is that he received an injection in his deltoid muscle not in his buttocks, as defendant describes. The discharge instructions indicate that COVID-19 vaccines should be given in the deltoid muscle. Even if this court assumes plaintiff did receive an injection in his deltoid muscle on August 23, plaintiff provides no evidence to show that injection was a COVID-19 vaccination.

Even taking the facts in the light most favorable to plaintiff, a rational trier of fact could not find that plaintiff was given a COVID-19 vaccine on August 23, 2021 by defendant. This court finds no plausible disputes of material fact. Therefore, defendant should be entitled to judgment in his favor.

Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 44) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

////

////

////

////

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 21, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB prisoner inbox/civil rights/S/unde0694.msj fr